FILED
07/23/2018
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 22, 2018 Session

## STATE OF TENNESSEE v. MELVIN DWAYNE DUNN, JR.

**Appeal from the Criminal Court for Knox County**
**No. 107418   G. Scott Green, Judge**

————————————————————

## No. E2017-00911-CCA-R3-CD

————————————————————

The Defendant, Melvin Dwayne Dunn, Jr., was convicted by a jury of nine counts of burglary; one count of attempted theft of property valued at $10,000 or more but less than $60,000; one count of evading arrest; and one count of possession of burglary tools. He was sentenced as a career offender and received an effective sentence of thirty-six years' imprisonment. On appeal, the Defendant challenges the sufficiency of the evidence to sustain his attempted theft conviction. He also argues that the trial court erred in admitting statements made by the Defendant during bond negotiations. After thorough review of the record and applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL, and ROBERT W. WEDEMEYER, JJ., joined.

Gerald L. Gulley, Jr., (on appeal) and Keith Lieberman (at trial), Knoxville, Tennessee, for the appellant, Melvin Dwayne Dunn, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Charme Allen, District Attorney General; and Philip Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL HISTORY

The Defendant's convictions resulted from a string of burglaries of Knox County businesses, which were all closed to the public at the time, within a two-month period.

The Defendant was indicted for nine counts of burglary; one count of attempted theft of property valued at $60,000 or more but less than $250,000; one count of evading arrest; and one count of possession of burglary tools. After the State's case-in-chief, the trial court determined that the attempted theft count would be downgraded to attempted theft of property valued at $10,000 or more but less than $60,000.

On May 5, 2015, at approximately 1:12 a.m., a suspect broke into a McDonald's located on Oak Ridge Highway. Video surveillance showed that the suspect was of stocky build, wore a camouflage shirt and mask, and carried a yellow-handled splitting maul. The following morning, the restaurant's safe was found in the middle of the floor with its door "completely peeled back." The two cartridges containing cash were missing from the inside of the safe. Ms. Tara Stockton, McDonald's Director of Operations, testified that $22,199 was taken from the safe.

On June 1, 2015, at approximately 1:38 a.m., a suspect broke into a Krystal restaurant. Surveillance footage showed a suspect of stocky build enter through the back door, wearing a camouflage shirt and mask and carrying either a pry bar or splitting maul. The suspect set the restaurant's safe onto a rolling bread rack and rolled it through the back door. The bread rack was later found near the parking lot of the restaurant. The alarm on the back door had been "hit with something" and was disabled as a result. Ms. Linda Bolton, Krystal Corporation District Manager, testified that $1,719.07 was in the safe that was taken.

On June 5, 2015, at approximately 1:06 a.m., a suspect used a pry bar to attempt to break into an ATM at Enrichment Federal Credit Union. Video surveillance of the incident showed that the suspect was of stocky build and wore a camouflage shirt with black stripes on the shoulders, a camouflage mask, and black gloves. After several minutes, the suspect pried the front cover of the machine up but could not access any cash. He then pushed the cover back down and left before law enforcement arrived. Ms. Alora Drinnon, Senior Branch Manager, estimated $60,000 would have been in the ATM at the time of the offense. She explained she could not know the exact amount because another company balanced and funded the machine. On cross-examination, she agreed that there could have been $58,000 or $59,000 in the machine.

On June 6, 2015, at approximately 2:17 a.m., a suspect shattered the glass in the drive-thru window at a McDonald's on Hardin Valley Road. The suspect appeared on the surveillance footage to be wearing the same outfit: a camouflage shirt with black stripes on the shoulders, a camouflage mask, and black gloves. He was of stocky build and carried a yellow-handled splitting maul. The suspect crawled through the window and began trying to break into a large safe with the maul. He then turned to a smaller safe, which was the same type of safe that was broken into at the Oak Ridge Highway

location on May 15. He broke into the smaller safe, removed the two cartridges containing cash, and left through the drive-thru window. Ms. Stockton testified that $2,577 was taken from the safe.

On June 19, 2015, at approximately 12:54 a.m., the McDonald's on Oak Ridge Highway was again burglarized. Video surveillance showed the suspect breaking through the glass of the drive-thru window, crawling through the window, taking the door off the safe, removing the two cartridges, and leaving through the same window from which he came. He was wearing the same outfit as in the previous break-ins, was of the same build, and carried the same yellow-handled splitting maul. Ms. Stockton testified that $4,710 was taken during this offense.

On July 4, 2015, at approximately 12:43 a.m., a suspect busted a hole through the back wall of East End Liquor Shop. He kicked in the door to the owner's office and left out of the back door. Mr. Chris Pierce, the store owner, testified that an old safe was opened but that nothing was inside the safe for the suspect to take. Video surveillance showed that the suspect wore the same outfit, was of the same build, and had the same yellow-handled splitting maul.

On July 6, 2015, at approximately 1:50 a.m., a suspect broke into a McDonald's on Northshore Drive. Surveillance footage showed a suspect of similar stocky build, entering through the drive-thru window, wearing the same outfit, and carrying the same yellow-handled splitting maul. He attempted to remove a large safe from the restaurant but left after failing to fit the safe through the back door.

On July 10, 2015, at approximately 2:00 a.m., the McDonald's on Hardin Valley Road was burglarized again. Video surveillance showed that the suspect, wearing the same outfit, of the same build, and carrying the same yellow-handled splitting maul, broke into the restaurant through the side entrance. He immediately ran through the kitchen and into the office, going straight to the smaller safe. He used the maul to break into the safe, removed the cartridges, and exited through the drive-thru window. Ms. Stockton testified that $2,870 was taken during this offense.

A few days after the offense on July 10, a yellow-handled splitting maul was found behind some bushes at the McDonald's on Hardin Valley Road. Law enforcement set up surveillance and left the maul there for a few days to see if the suspect would return to retrieve it. When the suspect did not return, the maul was taken by law enforcement.

On July 18, 2015, at approximately 4:19 a.m., a suspect busted a hole through the back wall of Woodland Market and Deli, owned by Mr. Jalal Boudarga. Surveillance

footage showed the suspect taking items from the shelves underneath the cash register, but the record does not indicate what was taken. The suspect also pulled a large safe out from a wall, and Mr. Boudarga explained that there was already a hole in the back of the safe from a prior break-in. Mr. Boudarga did not testify as to whether anything was taken from the safe.

Law enforcement had identified Mr. David Faubion as a possible suspect in the burglaries. A tracking device was placed on Mr. Faubion's blue Kia, and law enforcement observed Mr. Faubion in the early morning hours of July 23, 2015, as he parked in a Kroger parking lot near the McDonald's on Northshore Drive, which had previously been burglarized on July 6, 2015. Captain Aaron Yarnall of the Knox County Sheriff's Office was parked in the Kroger parking lot and observed as Mr. Faubion exited his vehicle and walked around the parking lot to look around. Law enforcement also heard two suspects having a conversation on a radio channel. One suspect, believed by law enforcement to be inside the McDonald's, was frustrated because he thought the safe was welded to the counter. The two suspects then discussed going to another location. One suspect gave the other suspect instructions on where to pick him up. A portion of the radio discussion was recorded and entered into evidence.

Law enforcement then observed Mr. Faubion's blue Kia stop at the discussed location, and when the Kia began to move again, law enforcement activated the blue lights and sirens on their vehicles. The Kia did not stop and continued to drive until it swerved into the side of the law enforcement vehicle driven by Captain David Amburn of the Knox County Sheriff's Office. The Kia bounced off a concrete barrier and crashed into a guard rail, bringing the car to a stop. Captain Amburn observed as a man in a camouflage jacket jumped over the guardrail on the passenger's side of the car and ran into a wooded area.

Video surveillance from the McDonald's that night showed that at approximately 12:29 a.m., a suspect, of stocky build and wearing the same outfit, broke into the restaurant through a side entrance, attempted to move the safe in the office, and left through the same door from which he entered. He was carrying a red-handled splitting maul. Mr. Henry Jones, McDonald's supervisor, explained that the safe was bolted to the floor and could not be moved. Nothing was taken during this offense.

A camouflage shirt with black stripes on the shoulders matching the one worn by the suspect in the burglaries was found hanging in a tree near the crash site. A red-handled splitting maul matching the one seen in the video from the McDonald's on Northshore Drive that night was found on the passenger's side of the blue Kia. A handheld two-way radio was also found in the car. Two fingerprints lifted from the passenger's side window matched those belonging to the Defendant.

- 4 -

Special Agent Kim Lowe of the Tennessee Bureau of Investigation forensic biology unit testified that she obtained a limited partial DNA profile from the camouflage shirt. She was unable to conclude whether the partial profile was consistent with that belonging to the Defendant due to insufficient or degraded DNA. She agreed that she was not given a DNA standard from Mr. Faubion to test.

Dr. Jack Rule testified that he owns property near the crash site of the Kia, and he had a motion-activated game camera on his property. On July 23, 2015, sometime between 12:50 and 2:50 a.m., the camera took a photograph of a man with very long hair. The hairstyle in the game camera photograph was consistent with the hairstyle of the Defendant in a photograph taken a few days after he was arrested.

Still photographs from the surveillance footage of the burglaries at the McDonald's on Hardin Valley Road on July 10 and at the Woodland Market and Deli on July 18 showed a close-up of the suspect's face. The camouflage mask covered the entire face and head, with the exception of the suspect's eyes and the bridge of his nose. The photographs showed that the suspect had a noticeable indention between his eyebrows and above his nose. This indention matched that shown in a photograph of the Defendant taken after he was arrested.

Co-Defendant David Faubion testified that he was involved in some of the burglaries of which the Defendant was accused. He stated that he had not been working and needed money to supply his drug addiction. The Defendant approached him and said he knew a way to make money, and Mr. Faubion agreed to participate in the burglaries. He testified regarding his involvement in the crimes at the McDonald's on Oak Ridge Highway on May 15, Krystal on June 1, Enrichment Federal Credit Union on June 5, East End Liquor Shop on July 4, the McDonald's on Northshore Drive on July 6, the McDonald's on Hardin Valley Highway on July 10, Woodland Market and Deli on July 18, and the McDonald's on Northshore Drive again on July 23. Mr. Faubion stated that for each of the incidents, Mr. Faubion would drive the Defendant in his blue Kia to an area near the intended establishment. They would park and walk toward the establishment, with Mr. Faubion remaining across the street to serve as a look-out. He and the Defendant communicated through handheld two-way radios. The Defendant would enter the establishment, break or attempted to break into a safe, and tell Mr. Faubion when he was finished. Mr. Faubion would either pick him up or they would meet at Mr. Faubion's car. He stated that the Defendant wore the same camouflage outfit and used the same maul and pry bar in each offense.

Mr. Faubion testified that on July 23, 2015, he and the Defendant had planned to rob the McDonald's on Northshore Drive again. He let the Defendant out of the vehicle

before parking in the Kroger parking lot nearby. He heard the Defendant say on the radio that the safe in the McDonald's was welded down, and they discussed going to a different McDonald's. Mr. Faubion picked up the Defendant in the blue Kia and then saw blue lights behind him. He stated that the Defendant told him to "go" and "grabbed the wheel a little bit" while Mr. Faubion pressed on the accelerator. Mr. Faubion stated that they were hit by another car, causing them to crash. The Defendant jumped out of the car and ran. Mr. Faubion was arrested at that time.

Mr. Faubion testified that he was charged along with the Defendant for the burglaries. He acknowledged that he was a convicted felon and was promised immunity from any additional crimes of which he had not yet been charged in exchange for his testimony. He hoped to benefit from his testimony.

On cross-examination, Mr. Faubion acknowledged that he had driven another man wearing camouflage to commit similar offenses. He further agreed that a camouflage shirt, two-way radios, and a splitting maul were found at his own house.

The State wished to admit into evidence video recordings of the Defendant discussing his bond with law enforcement officers. The defense objected, and the trial court determined that only two of the statements made by the Defendant could be admitted. In the first statement, the Defendant said, "I just don't feel right that I should go down for all this bullshit that they're throwing at me at one time when a couple of them are as guilty as I am, if not worse." In the second statement, the Defendant claimed to be able to bench press 365 pounds.[1]

The State also introduced portions of recordings of the Defendant's telephone calls while he was in jail. The admitted portions included the following statement from the Defendant:

> They stopped us in that car. They found the ski mask and stuff in that car. They said they were going to match it up to the guy that's been breaking in the stores…. They ain't got me doing nothing, and they caught me in nothing…. They're talking about DNA on that shirt. Of course DNA's on it. My back was on it against the headrest in his car…. They didn't catch me at the scene. They ain't caught me doing nothing….

---

[1] We note that the videos were edited to omit the rest of the conversation before being admitted into evidence but after the clip was played for the jury. The video clip included in the record on appeal does not include the Defendant saying he could bench press 365 pounds. Instead, the video begins with the officers presumably responding to such statement.

The Defendant also stated that anybody could buy camouflage shirts at Bass Pro Shop and that he had three or four shirts from there.

Ms. Cynthia Willis, the grandmother of the Defendant's child, testified on behalf of the defense. She stated that the Defendant arrived at her residence around 6:00 or 7:00 p.m. on May 31, 2015. He took his motorcycle home and returned to her house around 11:15 or 11:30 p.m. He remained at her house until the next morning, June 1, 2015. She stated that she remembered this date specifically because they were celebrating the Defendant's birthday. She acknowledged that she had a 2012 felony conviction for delivery of hydrocodone and denied that she would lie for the Defendant's benefit.

Detective Frederick Woodrow Martin of the Knox County Sheriff's Office provided rebuttal testimony on behalf of the State. He stated that he had reviewed the Defendant's telephone calls made from jail and recalled the Defendant asking someone "to make sure they knew he was at their house on his birthday."

The jury returned guilty verdicts for each count: nine counts of burglary; one count of attempted theft of property valued at $10,000 or more but less than $60,000; one count of evading arrest; and one count of possession of burglary tools. The trial court sentenced the Defendant to twelve years for each burglary conviction and for the attempted theft conviction. He received eleven months and twenty-nine days for the evading arrest conviction and possession conviction. Three of the burglary convictions were to run consecutively, while the remaining convictions were to run concurrently, for an effective sentence of thirty-six years' imprisonment. The Defendant timely appeals.

## ANALYSIS

The Defendant argues on appeal that the evidence was insufficient to support his attempted theft conviction. He also asserts the trial court erred in admitting his statements made while discussing his bond because such statements were made in the course of negotiating a settlement under Tennessee Rule of Evidence 408.

### I. Sufficiency of the Evidence

The Defendant maintains that the evidence was insufficient to support his conviction for attempted theft of property valued at $10,000 or more but less than $60,000 because Ms. Drinnon, the Senior Branch Manager of Enrichment Federal Credit Union, testified that she could not determine the exact amount of money in the ATM at the time the Defendant broke into it.

When a defendant challenges the sufficiency of the evidence, this court must determine whether the evidence is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). The appellate court examines the relevant statute to determine the essential elements for the offense and analyzes the evidence admitted at trial to determine whether each element is adequately supported. *State v. Stephens*, 521 S.W.3d 718, 723-24 (Tenn. 2017) (citations omitted). The court determines "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 724 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

The standard of review remains the same regardless of whether the conviction is based upon direct or circumstantial evidence. *Id.* (citing *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011)). "'[T]he State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom.'" *Id.* (quoting *State v. Harris*, 839 S.W.2d 54, 75 (1992)). This court does not reweigh the evidence. *Id.* (citing *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992)). Instead, "'a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts' in the testimony in favor of the State." *Id.* (quoting *Harris*, 839 S.W.2d at 75). The conviction replaces the presumption of innocence with a presumption of guilt. *Id.* (citing *Evans*, 838 S.W.2d at 191). On appeal, the defendant has the burden of demonstrating why the evidence is insufficient to support the verdict. *Id.* (citing *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982)).

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103(a). Theft of property valued at $10,000 or more but less than $60,000 is a Class C felony, T.C.A. § 39-14-105(a)(4) (2014), but attempted theft of that amount is a Class D felony, T.C.A. § 39-12-107(a). Criminal attempt occurs when a person:

> (1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;

> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

- 8 -

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

T.C.A. § 39-12-101(a).

The Defendant only challenges the sufficiency of the evidence as it pertains to the amount of money inside the ATM. Viewed in the light most favorable to the State, Ms. Drinnon estimated $60,000 was in the ATM when the Defendant attempted to break into it. She could not determine the exact amount because another company balanced and funded the machine. On cross-examination, she acknowledged there could have been $58,000 or $59,000 in the machine. A rational trier of fact, crediting her testimony, could have found beyond a reasonable doubt that the value of the property was more than $10,000. We conclude that the evidence is sufficient to support the conviction.

## II. Tennessee Rule of Evidence 408

The Defendant argues that the trial court was correct in determining that Tennessee Rule of Evidence 408 applied to bond negotiations made with law enforcement but that the court erred in admitting the statements that the Defendant can bench press 365 pounds and that "a couple of them are as guilty as I am." The State argues that a bond negotiation does not fall under the purview of Rule 408 because a bond negotiation is not a negotiation or compromise of a civil settlement, as envisioned by Rule 408. We agree with the State.

The Defendant contacted law enforcement on his own accord and sought to obtain a bond reduction in exchange for a promise to assist the State in prosecuting other burglaries in the area. The Defendant agreed that he was properly advised of his rights and signed a waiver prior to speaking with officers about the bond reduction. After reviewing the entire recording of the interview, the trial court held that only the Defendant's statement regarding his ability to bench press 365 pounds and the statement that "a couple of them are as guilty as I am" were admissible.

Tennessee Rule of Evidence 408 provides:

Evidence of (1) furnishing or offering to furnish or (2) accepting or offering to accept a valuable consideration in compromising or attempting to compromise a claim, whether in the present litigation or related litigation, which claim was disputed or was reasonably expected to be disputed as to either validity or amount, is not admissible to prove liability for or

invalidity of a civil claim or its amount or a criminal charge or its punishment. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence actually obtained during discovery merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution; however, a party may not be impeached by a prior inconsistent statement made in compromise negotiations.

The Advisory Commission Comment states that Rule 408 "excludes such evidence in both civil and criminal trials."

Tennessee Rule of Evidence 408, along with Rule 410, both "concern the admissibility of settlement negotiations at trial." *State v. March*, 395 S.W.3d 738, 772 (Tenn. Crim. App. 2011). In *State v. March*, a defendant told an officer, who was not authorized to negotiate a plea, he would plead guilty in exchange for a specific sentence, and several inculpatory statements made during this conversation were admitted into evidence. *Id.* at 759. This court noted on appeal that while "Rule 410 addresses the admissibility of settlement negotiations in a criminal case in a civil or criminal proceeding," Rule 408 "addresses the admissibility of settlement negotiations regarding a *civil* claim in a civil or criminal proceeding," and rejected the defendant's argument that the negotiation of an indictment is a "claim" under Rule 408. *Id.* at 722*; see State v. Jonathan C. Buckner*, No. M2016-01162-CCA-R3-CD, 2017 WL 3476068, at *18 (Tenn. Crim. App. Aug. 14, 2017) (noting that Rule 408 "addresses compromises and offers to compromise in civil cases" and holding that Rule 408 did not apply where the State used a written plea offer to show adequacy of notice of intent to seek enhanced punishment), *perm. app. denied* (Tenn. Dec. 6, 2017); Neil P. Cohen, et al. *Tennessee Law of Evidence* § 4.08[3], at 4−146 (5th ed. 2005) (noting that "Rule 408 is a broad rule … that makes many aspects of *civil* settlements inadmissible in a civil or criminal case" (emphasis added)).

The interview between the Defendant and law enforcement officers during which the Defendant asked for a bond reduction in exchange for information in solving additional burglaries is not a negotiation or compromise of a civil claim. Therefore, Rule 408 did not apply to the interview, and the trial court did not err under this rule in allowing the statements made by the Defendant during this interview.

**CONCLUSION**

Based on the foregoing, the judgment of the trial court is affirmed.


_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE